**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

ALLSTATE VEHICLE AND PROPERTY INSURANCE
COMPANY, as subrogee of Paolo Matoto and Rachel
Matoto,

                Plaintiff,

    v.                                                1:17-cv-1017
                                                           (TJM/DJS)
CATSKILL FARMS, INC., CLAWFOOT SUPPLY, LLC,
d/b/a SIGNATURE HARDWARE, ALLEN KING, d/b/a
A1K. Mechanical,

                Defendants.

_____

CLAWFOOT SUPPLY, LLC, d/b/a SIGNATURE
HARDWARE,

                Third Party Plaintiff,

    v.

DHATA, INC., and NCIP, INC.,

                Third Party Defendants.

_____

**Thomas J. McAvoy, Sr. U.S.D.J.**


# DECISION & ORDER

Before the Court is Third-Party Defendant NCIP, Inc.'s ("NCIP") motion to dismiss the complaint against the Defendant for lack of personal jurisdiction. See dkt. # 55. Third Party Plaintiff Clawfoot Supply, LLC ("Clawfoot") opposes the motion. See dkt. # 58. In

1

the alternative, Clawfoot moves to transfer the third-party case to the United States District Court for the Eastern District of Kentucky.

**I.     BACKGROUND**

This case involves efforts by Plaintiff Allstate Vehicle and Property Insurance Company ("Allstate") to recover for damages paid to Paolo and Rachel Matoto, Allstate's insureds, as a result of water damage that occurred to the Matotos' home.  See Amended Complaint, dkt. # 16.  Allstate alleges that Defendants, who were involved in constructing the Matotos' home and installed the plumbing and fixtures, were negligent, breached contracts and warranties, and are subject to damages for strict products liability.  Allstate contends that less than a year after the Matotos moved into their home "the integral valve on a faucet handle assembly located in a second floor bathroom . . . cracked, causing water to leak throughout the premises."  Id. at ¶ 11.  Substantial water damage to the home resulted from this crack.

Allstate alleges that Clawfoot's business involved "designing, manufacturing, and selling plumbing supplies."  Id. at ¶ 3.  Clawfoot "designed, manufactured, distributed, and/or sold the . . . [f]aucet" that allegedly cracked.  Id. at ¶ 33.  That faucet was defective when Clawfoot supplied it; "it could not properly withstand its own stress without cracking."  Id. at ¶ 35.  Clawfoot knew of the risks and defects in the product but delivered it anyway, doing nothing to address those risks.  Id. at ¶¶ 36-41.  Clawfoot's failings, Allstate contends, caused the cracked pipe and the substantial damage Allstate's insureds suffered to their home.  Id. at ¶ 45.

Clawfoot answered the Amended Complaint and the ensuing crossclaims by the

2

other parties. See dkt. # 25. Clawfoot also filed a third-party Complaint against the two entities which allegedly supplied the defective faucet that gave rise to this litigation. See dkt. # 27. Clawfoot alleges that the third-party Defendants, Dhata, Inc. ("Dhata"), and NCIP, "are corporations or business entities located at 33, Du Ruan North 2nd Road, Jiangmen, GG, China." Id. at ¶ 2. Dhata and NCIP, Clawfoot alleges, "designed, manufactured and/or distributed the [f]aucet the plaintiff alleges is defective and caused the alleged property damage." Id. at ¶ 5. Clawfoot's third-party claim seeks compensation on various contractual and tortious grounds from the two third-party Defendants for any damages Clawfoot may be obligated to pay as a result of Allstate's suit.

Dhata has yet to answer or otherwise respond to the third-party pleading. NCIP has responded, seeking dismissal on the basis that the Court lacks personal jurisdictional. Clawfoot opposes the motion. In the alternative, Clawfoot seeks either jurisdiction discovery or a transfer of the third-party action to the United States District Court for the Eastern District of Kentucky.

## II. LEGAL STANDARD

Defendant seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(2). Federal Rule of Civil Procedure 12(b)(2) permits a defendant to move to dismiss the case for "lack of personal jurisdiction." FED. R. CIV. P. 12(b)(2). "The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant when served with a Rule 12(b)(2) motion to dismiss." Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001). When a party moves to dismiss a complaint for lack of personal jurisdiction and the matter "is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor, notwithstanding a

controverting presentation by the moving party." A.I. Trade Fin. v. Petra Bank, 989 F.2d 76, 79-80 (2d Cir. 1993). Though the Plaintiff has the burden of establishing jurisdiction, "where no evidentiary hearing has been held, the plaintiff need make only a prima facie showing of jurisdiction." Windfield v. C & C Trucking, 56 Fed. R. Serv. 3d at *5 (S.D.N.Y. 2003). Still, "'[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.'" APWU v. Potter, 343 F.3d 618, 627 (2d Cir. 2003) (quoting LeBlanc v. Cleveland, 198 F.3d 353, 356 (2d Cir. 1999)). The court "'retains considerable lattitude devising the procedures it will follow to ferret out the facts pertinent to jurisdiction.'" Id. (quoting Phoenix Consulting, Inc. v. Republic of Angola, 342 U.S. App. D.C. 145, 216 F.3d 36, 40 (D.C. Cir. 2000)).

## III. ANALYSIS

### A. Jurisdictional Facts

NCIP moves for dismissal based on lack of personal jurisdiction.[1] NCIP's CEO, Willie Liang, provided an affidavit in connection with the company's motion. See Exh. A to Attorney Affirmation of Marc J. Kaim, dkt. # 55-4. NCIP, Liang states, "manufactured the

---

[1] Included in NCIP's moving papers is a "statement of material facts." Local Rule 7.1(3) requires that "[a]ny motion for summary judgment shall contain a Statement of Material Facts. The Statement of Material Facts shall set forth, in numbered paragraphs, each material fact about which the moving party contends there exists no genuine issue." L.R. 7.3(1). While, as explained above, the Court here may consider matters outside the pleadings, this is not a motion for summary judgment. Neither the movant nor the respondent is required to provide the Rule 7.3 statement. The Court will consider the affidavits and other evidence provided by the parties in evaluating NCIP's motion, but will not apply the standard required of the Rule 7.3 statement, which provides that "[t]he Court shall deem admitted any properly supported facts set forht in the Statement of Material Facts that the opposing party does not specifically controvert." Id. (emphasis in original).

4

subject faucet." Id. at ¶ 1.  Liang, in his capacity as CEO, has "first hand knowledge concerning all of the assets held by NCIP, the handling of NCIP's legal matters and NCIP's business operations[.]"  Id. at ¶ 4.  According to Liang, NCIP is a Taiwanese company with a principal place of business in that country.  Id. at ¶ 6.  NCIP has no office in New York.  Id. at ¶ 7.  NCIP did not know the faucet had been sold in New York before receiving the third-party claim, and the company does not know "of any other claims and/or lawsuits involving the sale of faucets in New York."  Id. at ¶ 10.  NCIP, Liang claims, did not know that the faucet NCIP sold to Clawfoot would be sold to a contractor in New York, or that the faucet would be installed in that state.  Id. at ¶ 12.  Moreover, NCIP does not have bank accounts, real or personal property, employees, subsidiaries, assets, tax liabilities, or offices in New York.  Id. at ¶¶ 13-16, 18-19.  NCIP has no phone number in New York.  Id. at ¶ 17.  Indeed, Liang claims, NCIP does not have any bank accounts, offices, real or personal property, subsidiaries, or phone listings in the United States.  Id. at ¶ 20-22, 24-25.  Neither does NCIP have any employees who reside in the United States, do any advertising there, or send representatives to "service, repair, or assembl[e] . . . its products."  Id. at ¶ 23, 26-27.  According to Liang, once NCIP shipped the faucet to Clawfoot, Clawfoot "would thereafter sell the product to a buyer," and NCIP would not take part "in the daily activities of its distributors nor are they able to control the business decisions of its distributors."  Id. at ¶ 30.

Clawfoot contends that the evidence establishes personal jurisdiction over NCIP. Clawfoot cites to shipping documents which the third-party Plaintiff contends indicates that NCIP transacts business in the State of New York, shipping products "to and through" the State and making "direct shipments to a New York plumbing retailer."  See Declaration of

5

Joseph DeDonato, dkt. # 58-3, at ¶ 5. Further, Clawfoot contends, "[a]ll orders are placed with NCIP and its manufacturing plant called DAHATA jointly. There's no indication that they are separate entities and DAHATA and NCIP share the same website." Id. at ¶ 6.

Clawfoot points to a variety of evidence to support these claims. Clawfoot contends that it has supplied a "true and complete copy of the website of the Third Party Defendant, NCIP."[2] See Exh. B to Declaration of Joseph DeDonato, dtk. # 58-5. The webpage that Clawfoot provides indicates that Dhata, Inc., was established in 1998 in Taiwan. Id. The "about us" secion provides that DAHATA is "[t]he hardware factory of our parent company–NCIP Inc." Id. The page further provides that "[s]ince 1979 NCIP (known as CIP before 2009) has been engaged in the business of bathroom and kitchen accessories." Id. The company began "as a trading company mainly sourcing and exporting OEM items and components in the Taiwan area for the clients in the plumbing industry around the world." Id. The company imported some products from Europe and the United States for sale in Taiwan. Id. CIP began producing and exporting plastic injection molds and parts in 1983. Id. CIP established a factory in China in 1990. Id. Other factories followed in 1998 and 1999, mainly to manufacture hardware products. Id. The company continued to add businesses and business systems over the next ten years,

---

[2]The Court has visited the URL provided by Clawfoot. See www.ncipfaucet.company.weiku.com (visited 11/8/18). The information on this page apparently comes from the Chinese website Weiku. "Founded in June 2003, Hangzhou Weiku Information Technology Co., Ltd. is a high-tech enterprise which operates e-commerce platforms for global markets. With headquarter [sic] in Hangzhou, China's City of E-commerce, Weiku has been experiencing an unsurpassable expansion through the years, and has become the biggest e-commerce company in China." http://www.weiku.com/about/aboutus.aspx (visited 11/8/18). Nothing indicates that NCIP or Dhata placed this information on the website, or that the information accurately defines the legal relationship between the two companies.

and in 2009 CIP's "Taiwan Company was renamed from CIP to NCIP INC and our domestic factory was renamed DAHATA INC." Id. The company listed as its registered address "No. 33, North 2nd rd., Duruan Town, Pengjiang District, Jiangmen, Guangdong, China (Mainland)." Id.

Clawfoot also provides the declaration of Adrian Krech in support of the company's assertion of jurisdiction. See Declaration of Adrian Krech, dkt. # 58-8. Krech serves as a Senior Project Manager for Clawfoot. Id. at ¶ 1. Clawfoot, Krech relates, retails plumbing and decorative kitchen and bath fixtures. Id. The company makes sales online and at a retail location in Kentucky. Id. Krech supervises a number of products, including the faucet at issue in this case. Id. He also manages "relationships with manufactures and suppliers of our product line," included the third-party defendants here. Id. Krech contends "Dhata and NCIP have suplied" Clawfoot with products "for many years, including 2015 to date." Id. Clawfoot purchases "a significant volume" of Dhata and NCIP products. Id. Krech claims that "Dhata is the hardware factory of NCIP." Id. Clawfoot sells the products the third-party Defendants deliver "without modification, in their original boxes[.]" Id. His "regular communication by email" with those Defendants in the past two years includes at minimum a monthly "purchase order . . . with Dhata and NCIP." Id. Krech's declaration contains as exhibits "purchase orders [that] demonstrate well over $2,000,000 in products shipped by Dhata and NCIP" to Clawfoot at Clawfoot's Erlanger, Kentucky warehouse. Id. at ¶ 6. Clawfoot also "regularly receives communications from Dhata and NCIP." Id. at ¶ 8. The Defendants frequently "confirm orders and regularly correspond by email with [Clawfoot] in the State of Kentucky, sending addittional documents pertaining to the orders and shipment." Id. at ¶ 8.

7

The exhibits to Krech's declaration contain a great deal of correspondence concerning purchases by Clawfoot of products from the Third-Party Defendants. Of significance to this motion, the purchase orders direct a shipment to "Signature Hardware" in Erlanger, Kentucky. See, e.g., Exh. A to Krech Declaration, Purchase Order dated March 27, 2013. The recipient of the order by fax is listed as "DAHATA, INC (NCIP INC.), with an address as 33, North 2nd RD, Duruan, JiangMen, GG, CN." Id. The purchase orders are numerous, constituting well over two hundred pages and extending from March 2013 until September 2018. Id. They all contain the same addresses and descriptions of the companies involved. Id. ("NCIP Inc.) always follows "Dahata, Inc." Id.

Joseph Dedonato's declaration contains "true and complete copies of public import records of NCIP from website." Dedonato Declaration, at ¶ 3; see, also Exh. C to Dedonato Declaration, dkt. # 58-6. The declaration does not describe what this website is, or exactly what these documents record and for what purpose. One such document shows a shipment from Dhata in Guangdong, China to Signature Plumbing Specialities at 230 Fifth Avenue Suite 1011, New York, 10001. Exh. C to Dedonato Declaration. The shipment's arrival date is listed as May 15, 2018, and appears to contain plumbing supplies. Id. Another shipment to Signature Plumbing from Dhata, Inc., has a listed arrival date of August 13, 2018. Id. A third involving the same parties is listed as arriving on March 12, 2018. Id. Another has an arrival date of February 5, 2018. Id. A fifth such shipment has a listed arrival date of December 18, 2017. Id.

Clawfoot also includes information about hundreds of shipments made that appear to have arrived in the United States. Id. Some of the information indicates shipments made in 2018. Id. NCIP and Dhata appear as shipper on many of the reports. Id. New

8

York/Newark Area is frequently listed as a port in this documentation.  Id.  In one case, shipment is listed as being delivered to "The Keeney Manufac [sic]" from NCIP, Inc., on August 28, 2018.  Id.  The US port to which the shipment appeared destined is listed as "New York, New York."  Id.  Another document shows shipments of plumbing supplies to a company in Springfield Gardens, New York, set to arrive on August 10, 2018.  Id.  The document does not contain any direct reference to either of the third-party defendants.  Id.  In general, the documents are not a model of clarity, and the Court finds it difficult to determine their source, what information is contained on them, and how they relate to Clawfoot's position.

### B. Personal Jurisdiction

The question here is whether New York law and federal law permit an exercise of jurisdiction over the Defendants.  "In the absence of a federal statute specifically directing otherwise, and subject to the limitations imposed by the United States Constitution, we look to the law of the forum state to determine whether a federal district court has personal jurisdiction over a foreign corporation."  Brown v. Lockheed Martin Corp., 814 F.3d 619, 624 (2d Cir. 2015).  "'[T]he court must look first to the long-arm statute of the forum state, in this instance New York.'"  Whitaker, 261 F.3d at 208 (quoting Bensusan Rest. Corp. v. King, 126 F.3d 25, 27 (2d Cir 1997)).  If the long-arm statute permits jurisdiction, "the court must decide whether such exercise comports with the requisites of due process."  Id. (internal citations omitted).  A court that finds a lack of personal jurisdiction under state law need not reach the due process question.  Id.

    i    **CPLR § 302(a)**

Plaintiff argues that Defendant is subject to jurisdiction pursuant to New York's "long arm" statute, CPLR § 302(a). "A defendant who is not 'doing business' in New York within the meaning of section 301 [of the New York Civil Procedure Laws and Rules] may be sued in New York on a lesser showing of forum contacts if the cause of action arises from those contacts." Beacon Enterprises, Inc. v. Menzies, 715 F.2d 757, 763 (2d Cir. 1983). Section 302(a) provides that "[a]s to a cause of action arising from any of the acts enumerated in this section," the Court may exercise jurisdiction over a person or person's agent who:

> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
> 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
> 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>     (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>     (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
> 4. owns, uses or possesses any real property situated within the state.

CPLR § 302(a).

Even if the Court finds that the long-arm statute permits jurisdiction over NCIP under the circumstances, the Court must also determine whether, under the circumstances, the Court's exercise of jurisdiction comports with due process. "If the long-arm statute permits personal jurisdiction, the second step is to analyze whether personal jurisdiction comports with the Due Process Clause of the United States Constitution." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164 (2d Cir. 2010). "The Due

Process clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." Walden v. Fiore, 134 S.Ct. 1115, 1121 (2014). The defendant need not be present in the state, but "the nonresident generally must have 'certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" Id. (quoting International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). Due process requires that "the defendant's suit-related conduct . . . create a substantial connection to the forum State." Id. Such connection must be "with the forum State itself," and the court does not look to "the defendant's contacts with persons who reside there." Id. at 1122. In considering "whether personal jurisdiction is present, a court must consider a variety of interests," including "'the interests of the forum State and of the plaintiff in proceeding with the cause in the plaintiff's forum of choice.'" Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County, 137 S.Ct. 1773, 1780 (2017) (quoting Kulko v. Superior Court of Cal., City and County of San Francisco, 436 U.S. 84, 92 (1978)). Still, the court's "'primary concern'" should be "'the burden on the defendant." Id. (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, (1980)). Those burdens include both "the practical problems resulting from litigating in the forum" and "the more abstract matter of submitting to the coercive power of a State that may have little legitimate interest in the claims in question." Id.

"For a state to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." Waldman v. Palestine Liberation Organization, 835 F.3d 317, 335 (2d Cir. 2016) (quoting Walden, 134 S.Ct. at 1121). Due process requires that "the relationship" between the defendant

11

and the forum State "must arise out of contacts that the 'defendant *himself*' creates with the forum state." Walden, 124 S.Ct. at 1222 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985)). The relevant connections are ones created by the defendant with the forum State, "'not the defendant's contacts with persons who reside there.'" Id. (quoting Walden, 134 S.Ct. at 1122).

Clawfoot contends that Defendant is subject to jurisdiction pursuant to Section 302(a)(1) and (a)(3).

### 1. Section 302(a)(1)

Clawfoot first relies on Section 302(a)(1), "transaction of business," as a source of long-arm jurisdiction over NCIP. "The showing necessary for a finding that defendant 'transacted business' and is suable on a cause of action arising from that transaction is considerably less than that needed to establish defendant's 'doing business,' which renders the defendant subject to suit on even an unrelated cause of action." Hoffritz for Cutlery, Inc. v. Amjac, Ltd., 763 F.2d 55, 58 (2d Cir. 1985). "It is well settled that in order for a court to obtain personal jurisdiction over a party under the 'transaction of business' [element] of § 302(a)(1), the party need not be physically present in the state at the time of service." Bank Brussles Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 787 (2d Cir. 1999). Instead, a party must have "'purposely availed [itself] of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws[.]'" Id. (quoting Parke-Bernet Galleries v. Franklyn, 26 N.Y.2d 13, 18, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970)).

Courts examining this provision have applied a number of "factors . . . in

12

determining whether an out-of-state defendant transacts business in New York, including":

> (i) whether the defendant has an on-going contractual relationship with the New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

Sunward Electronics, Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004) (quoting Agency Rent A Car Sys., Inc. v. Grand Rent a Car Corp., 98 F.3d 25, 29 (2d Cir. 1996)). "Although all factors are relevant, no one factor is dispositive and all factors may be considered." Id. "'The ultimate determination is based on the totality of the circumstances." Id. (quoting Agency Rent A Car, 98 F.2d at 29).

A party may be subject to long-arm jurisdiction through Section 302(a)(1), but only if the cause of action in question arises out of the business that party does in New York. Courts have "concluded 'that it was the purpose of CPLR 302 to extend the jurisdiction of our State courts to nonresidents who have 'engaged in some purposeful activity [here] . . . in connection with the matter in suit[.]'" Ferrante Equipment Co. v. Lasker-Goldman Corp., 26 N.Y.2d 280, 284, 309 N.Y.S. 2d 913, 916 (1970) (quoting Longines-Wittnauer Watch Co. v. Barnes & Reinecke, 15 N.Y.2d 443 (1965)). Even one transaction can invoke jurisdiction, "so long as the relevant cause of action arises from that transaction." Id. Jurisdiction exists when "the defendant's activities" in the state "'were purposeful and there is a substantial relationship between the transaction and the claim asserted.'" Chole v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 170 (2d Cir. 2010) (quoting Kreutter v. McFadden Oil Corp., 71 N.Y.2d 460, 622 N.E.2d 40, 43 (N.Y. 1988)). The court must find

13

"some articulable nexus between the business transacted and the cause of action sued upon[.]" Beacon Enterprises, 715 F.2d at 764.

Clawfoot argues that it has "produced public shipping records [that] indicate that NCIP has shipped a significant amount of its products to the New York/Metropolitan area." Moreover, Clawfoot claims, NCIP's products went to New York entities which then sold those products in New York State. "NCIP cannot possibly contend that its multiple shipments of plumbing products to Signature Plumbing in Manhattan did not give rise to a reasonable expectation that NCIP could be sued for a defective product in New York State. NCIP was clearly doing repeated business in New York by shipping its products through or to New York State." This situation, Clawfoot insists, permits the Court to exercise personal juridiction over NCIP.

As NCIP points out, however, the problem with Clawfoot's argument is that Clawfoot has not alleged or pointed to any evidence which indicates that the causes of action it asserts against NCIP arose from the business that NCIP engaged in in New York. Plaintiff has simply provided proof that Dhata has on several cases shipped goods to New York or through a harbor New York shares with New Jersey and pointed to some evidence that NCIP and Dhata have a business relationship that might be characterized as parent/subsidiary. As explained above, without a connection between the cause of action and the business transacted, the Court cannot find long-arm jurisdiction pursuant to Section 302(a)(1). As will be explained below, however, the Court also finds that jurisdictional discovery is necessary to determine the relationship between the third-party defendants and the relationship of those defendants to the instant causes of action.

**2. Section 302(a)(3)(ii)**

Clawfoot also argues that Section 302(a)(3)(ii) permits the Court to exercise specific jurisdiction over NCIP. Under that section, personal jurisdiction requires "five elements: first, that defendant committed a tortious act outside the State; second, that the cause of action arises from that act; third, that the act caused injury to a person or property within the State; fourth, that defendant expected or should reasonably have expected the act to have consequences within the State; and fifth, that defendant derived substantial revenue from interstate or international commerce." LaMarca v. Pak-Mor Mrg. Co., 94 N.Y.2d 210, 214 (N.Y. 2000). "The fourth element–contemplating 'in-State consequences' is met when '[t]he nonresident torfeasor . . . expects[s], or ha[s] reason to expect, that his or her tortious activity in another State will have *direct* consequences in New York.'" Id. at 214-215 (quoting Ingram v. Carroll, 90 NY2d 592, 598 (NY 1997) (emphasis in original)). The purpose of this element is "'to ensure some link between defendant and New York State to make it reasonable to require a defendant to come to New York to answer for tortious conduct committed elsewhere.'" Id. (quoting Ingraham, 90 NY2d at 598).

Clawfoot argues that the NCIP's conduct qualifies for jurisdiction under this statute. NCIP responds, in relevant part, that Clawfoot improperly attempts to ascribe to NCIP conduct and transactions better assigned to Dhata. The shipments that Clawfoot points to, NCIP claims, were shipments made by a separate business entity, and Clawfoot has provided no proof that NCIP should be responsible for them.

The Court agrees with NCIP that the evidence here is insufficient to demonstrate that NCIP's activities connect NCIP to the tortious conduct that gave rise to this case, and to conduct by Dhata that could give rise to long-arm jurisdiction. The Court cannot determine from the evidence provided by Clawfoot the extent of the relationship between

15

the two companies.  The Court has only statements on a website and vague references in shipping documents.  That is insufficient for the Court to determine whether Dhata and NCIP are the same company, or if they have some other sort of business relationship.  The Court notes, however, that there appears to be some likelihood of personal jurisdiction on the basis of Section 302(a)(3)(ii) if Clawfoot can show a relationship between NCIP and Dhata that would make NCIP liable for Dhata's conduct.  Clawfoot has certainly alleged tortious conduct–the sale of a defective product–that occurred outside New York, but which caused damages in New York.  Clawfoot has also alleged that the seller of that product has some reason to believe that the sale would have consequences in New York.  Without better knowledge about the relationship between Dhata and NCIP, however, the Court cannot know whether the conduct giving rise to potential personal jurisdiction should be imputed to Dhata, NCIP, neither, or both. Indeed, Dhata has not answered or otherwise responded to the Third-Party Complaint, and Clawfoot's allegations and evidence are insufficient for the Court to make that determination at this point.  Without additional evidence, the Court also cannot at this point determine whether an exercise of jurisdiction over either or both parties would comport with the requirements of due process.

As Clawfoot points out, courts are permitted to allow jurisdictional discovery, but "[w]here plaintiffs do not establish a prima facie case that the district court has jurisdiction over the defendant, the court does not err in denying jurisdictional discovery." Chirag v. MT Marida Marguerite Schiffahrts, 604 Fed. Appx., 16, 18-19 (2d Cir. 2015) (citing Jazini v. Nissan Motor Co., Ltd., 148 F.3d 181, 186 (2d Cir. 1998)).  "A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes

16

the basis of jurisdiction has taken place." Id. at 19.

The Court finds that Clawfoot has made out a prima facie case for personal jurisdiction against NCIP, but that the evidence thus far produced is insufficient for the Court to make a final determination as to whether the Court may exercise personal jurisdiction over NCIP and hear the case in this respect. As such, the Court will direct the Magistrate Judge presiding over this matter to confer with the parties and establish a period of jurisdictional discovery in an effort to resolve this question. NCIP's motion will be denied with leave to renew at the end of that period. Clawfoot's cross-motion to sever the Third-Party Complaint and transfer jurisdiction over that matter to the United States District Court for the Eastern District of Kentucky will also be denied with leave to renew.

## IV.    CONCLUSION

For the reasons stated above, NCIP's motion to dismiss for lack of personal jurisdiction, dkt. # 55, is hereby DENIED with leave to renew at an appropriate time. Magistrate Judge Daniel J. Stewart is hereby directed to confer with the parties and establish an appropriate period of jurisdictional discovery, as well as a schedule for briefing any renewed motion to dismiss for lack of personal jurisdiction NCIP may choose to file after the close of that discovery. Clawfoot's cross-motion to transfer, raised in Clawfoot's response to NCIP's motion, dkt. # 58, is hereby DENIED with leave to renew at an appropriate time.

Dated: December 13, 2018

*Thomas J. McAvoy*
Thomas J. McAvoy
Senior, U.S. District Judge

17